UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |
|---|---|
| COURTNEY THOMAS,<br>    Plaintiff,<br><br>    v.<br><br>INTERNATIONAL CDL TRACTOR<br>TRAILER TRAINING, LLC,<br>    Defendant. | C.A. No. 1:24-cv-00241-MSM-LDA |

ORDER

Mary S. McElroy, United States District Judge.

Defendant, International CDL Tractor Trailer Training, LLC, ("International CDL") moves to dismiss the complaint of plaintiff Courtney Thomas, who appears here pro se, for failure to state a claim and for lack of subject matter jurisdiction. (ECF No. 10.) The parties have since filed cross-motions for summary judgment. (ECF Nos. 11, 19.) The Court GRANTS the defendant's Motion to Dismiss as follows: the plaintiff's claim of breach of the settlement agreement is DISMISSED without prejudice to re-filing in a court of competent jurisdiction, and all other claims are DISMISSED with prejudice. The Court DENIES as moot both parties' Motions for Summary Judgment and the defendant's Motion to Strike. (ECF No. 24.)

In March 2022, the plaintiff, a citizen of Massachusetts, paid the defendant, a Rhode Island commercial driver training school, $5,000 in tuition to assist him in obtaining his Class A driver's license. (ECF No. 8 at 2.) In February 2023, he sued the defendant in a separate action in this Court. *See* C.A. 23-cv-00080-MSM-PAS

1

("*Thomas I*"). In May 2023, the parties reached a settlement agreement (ECF No. 8 at 7) and stipulated to a dismissal with prejudice. *See Thomas I*, ECF No. 10. As part of that agreement, the defendant promised, subject to certain conditions, that the plaintiff could work with a particular instructor as he continued in the training program. (ECF Nos. 8 at 7; 7-5 at 2-3.) On January 25, 2024, that instructor notified the plaintiff that he would no longer train him. (ECF No. 8 at 7-8.)

The plaintiff filed this lawsuit in June 2024. He alleges that International CDL violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), through disparate treatment based on race, a racially hostile work environment, and retaliation; engaged in unfair or deceptive trade practices in violation of the Rhode Island Deceptive Trade Practices Act ("DTPA"), R.I. Gen. Laws § 6-13.1-2; and breached both their initial contract for training and the *Thomas I* settlement agreement. (ECF No. 8 at 1-2, 27.) As in *Thomas I*, the plaintiff bases most of his claims on his experience as a student at the defendant's school between March 2022 and January 2023. *Compare* ECF No. 8 at 2-7, *with Thomas I*, ECF No. 1 at 6-8. But this Complaint also alleges that the defendant (1) breached the *Thomas I* settlement agreement and (2) took new actions violating Title VII after the settlement agreement was signed. (ECF No. 8 at 15, 27.)

The defendant moves to dismiss under Fed. R. Civ. P. 12(b)(6) on three grounds: (1) that all claims are barred by the doctrine of claim preclusion; (2) that the plaintiff's Title VII claims are unexhausted and untimely; and (3) that, if the Title VII claims are dismissed, this Court lacks subject matter jurisdiction over the

2

remaining state-law claims. (ECF No. 10 at 2, 11.) A court may consider claim preclusion on a motion to dismiss if doing so will not endanger the parties' substantive rights. *Limerick v. Greenwald*, 666 F.2d 733, 736 (1st Cir. 1981) (citing *Diaz-Buxo v. Trias Monge*, 593 F.2d 153 (1st Cir. 1979)). Because the plaintiff has had notice of and an opportunity to challenge the defendant's claim preclusion arguments, resolving the issue at this procedural stage will not prejudice him. (ECF Nos. 6-1 at 2; 10 at 11; 15 at 7-9.) *See, e.g., Zotos v. Town of Hingham*, C.A. No. 12-11126-JGD, 2013 WL 5328478, at *8 (D. Mass. Sept. 19, 2013). The Court applies the Rule 12(b)(6) standard, *see Sonoiki v. Harvard University*, 37 F.4th 691, 703 (1st Cir. 2022), to the defendant's claim preclusion, exhaustion, and timeliness arguments and the Rule 12(b)(1) standard, *see Gordo-González v. United States*, 873 F.3d 32, 35 (1st Cir. 2017), to the defendant's jurisdictional challenge.[1]

Claim preclusion bars the plaintiff's claims based on allegations predating the *Thomas I* dismissal. The Court has reviewed the record in *Thomas I*. *See* C.A. 23-cv-00080-MSM-PAS. If a Rule 12(b)(6) motion to dismiss "is premised on a defense of res judicata, … the court may take into account the record in the original action." *Andrew Robinson Intern., Inc. v. Hartford Fire Ins.*, 547 F.3d 48, 51 (1st Cir. 2008) (citing *R.G. Fin. Corp. v. Vergara-Nuñez*, 446 F.3d 178, 183-84 (1st Cir. 2006); *Boateng v. InterAm. Univ.*, 210 F.3d 56, 60 (1st Cir. 2000)).

---

[1] The defendant's Motion to Dismiss cites Fed. R. Civ. P. 12(b)(6) without reference to Rule 12(b)(1). Because Rule 12(b)(1) is the appropriate vehicle for a challenge to a court's subject matter jurisdiction, the Court applies that standard instead.

3

Because *Thomas I* was resolved in federal court, federal principles of claim preclusion apply. *Apparel Art Int'l v. Amertex Enters*, 48 F.3d 576, 582 (1st Cir. 1995). Under those principles, a plaintiff may not bring claims in a later action that "could have been, but were not, litigated in an earlier suit." *Silva v. City of New Bedford*, 660 F.3d 76, 78 (1st Cir. 2011) (citing *Airframe Sys., Inc. v. Raytheon Co.*, 601 F.3d 9, 14 (1st Cir. 2010)). Two of the three requirements for claim preclusion—a final judgment on the merits and identity of the parties—are met here. *Airframe Sys., Inc.*, 601 F.3d at 14. The third requirement, that the earlier and later claims be sufficiently related, is met if they "arise out of a common nucleus of operative facts," without regard for how a plaintiff has labeled his causes of action. *Id.* at 15 (quoting *Mass. Sch. of Law at Andover, Inc. v. Am. Bar. Ass'n*, 142 F.3d 26, 38 (1st Cir. 1998)). As noted above, the bulk of the plaintiff's current claims arise from the same common nucleus of operative facts as those in *Thomas I*: his experience in the defendant's training program between March 2022 and January 2023. To the extent that he now seeks to litigate claims based on those facts, he is barred by claim preclusion. The defendant's Motion to Dismiss is GRANTED as to the plaintiff's Title VII claims predating the *Thomas I* dismissal, the alleged breach of the initial training contract, and the alleged violation of the DTPA, all of which are DISMISSED with prejudice.

The only surviving claims concern the defendant's post-*Thomas I* conduct, which Mr. Thomas alleges amounted to a breach of the settlement agreement and violation of Title VII. (ECF No. 8 at 15, 27.) His new Title VII claims fail for lack of

4

administrative exhaustion and untimeliness.[2]  Before bringing a Title VII claim in federal court, a plaintiff must exhaust his administrative remedies.  *See Abraham v. Woods Hole Oceanographic Inst.*, 553 F.3d 114, 119 (1st Cir. 2009).  A plaintiff's "unexcused failure" to do so "effectively bars the courthouse door." *Jorge v. Rumsfeld*, 404 F.3d 556, 564 (1st Cir. 2005).  In Rhode Island, the first step of administrative exhaustion is to file an administrative charge with the EEOC (or its state or local counterpart) within 300 days of the last alleged violation.  *See Rivera-Díaz v. Humana Ins. of P.R., Inc.*, 748 F.3d 387, 390 (1st Cir. 2014); 42 U.S.C. § 2000e-5(e)(1); 29 C.F.R. § 1601.131(a)(4)(ii)(A).  The plaintiff dates the most recent discriminatory act to January 25, 2024.  (ECF No. 8 at 12.)  He does not claim to have ever filed an administrative charge.  (ECF Nos. 8 at 9-11; 15 at 2, 4.)  The 300-day window has now run, and the plaintiff has not identified any circumstances justifying an equitable exception to this requirement.  *See Jorge*, 404 F.3d at 565 ("[A]n employee is generally not entitled to avail herself of the doctrine of equitable tolling if the procedural flaw that prompted the dismissal of her claim is of her own making.").

Although the plaintiff is correct that the administrative exhaustion requirement is not jurisdictional, it is still mandatory. *Fort Bend Cnty., Texas v. Davis*, 587 U.S. 541, 550-51 (2019).  That the defendant did not raise administrative exhaustion in *Thomas I*, which it settled before the filing of an answer or substantive motion practice, does not mean that it has waived this defense.  *Cf. id.* at 546-47

---

[2] The defendant's Motion to Dismiss did not dispute that Title VII applied to its relationship with the plaintiff.

(defendant who waited "[y]ears" to raise administrative exhaustion waived defense). The defendant's Motion to Dismiss is GRANTED as to Mr. Thomas' Title VII claims, which are DISMISSED with prejudice.

The Court lacks subject matter jurisdiction over the only other claim surviving preclusion: that the defendant breached the settlement agreement. No basis for federal question jurisdiction remains. Federal diversity jurisdiction exists if (1) there is diversity of citizenship between the parties, which the defendant does not dispute, and (2) the amount in controversy, exclusive of interest and costs, is greater than $75,000, which the defendant challenges. 28 U.S.C. § 1332(a). A plaintiff's asserted amount-in-controversy sum controls if made in objective good faith, meaning that, "to anyone familiar with the applicable law," his "claim could objectively have been viewed as worth" more than $75,000. *Abdel-Aleem v. OPK Biotech LLC*, 665 F.3d 38, 41 (1st Cir. 2012) (quoting *Coventry Sewage Assocs. v. Dworkin Realty Co.*, 71 F.3d 1, 6 (1st Cir. 1995)). A plaintiff who did not act in deliberate bad faith may still fail to meet this objective standard. *Coventry Sewage Assocs.*, 71 F.3d at 6.

When a defendant challenges a plaintiff's stated amount in controversy, it becomes the plaintiff's burden to allege, "with sufficient particularity," facts indicating that it is *not* a legal certainty that the claim involves less than $75,000. *Andersen v. Vagaro, Inc.*, 57 F.4th 11, 14 (1st Cir. 2023) (quoting *Dep't of Recreation & Sports of P.R. v. World Boxing Ass'n*, 942 F.2d 84, 88 (1st Cir. 1991)). Dismissal is justified where it appears to a legal certainty that the claim is worth less than this jurisdictional amount. *Abdel-Aleem*, 665 F.3d at 41.

To meet his or her burden, a plaintiff may amend the complaint or submit additional documentation. *Andersen*, 57 F.4th at 14. Here, after the defendant attacked the plaintiff's amount-in-controversy allegations in its original Motion to Dismiss (ECF No. 6-1 at 8), the plaintiff amended his Complaint. (ECF No. 8 at 27-28.) The plaintiff's Amended Complaint alleges the following damages, exclusive of interest and costs: (1) the cost of his tuition ($5,000), trebled under the punitive-damages provision of the DTPA, R.I. Gen. Laws § 6-13.1-5.2(a), for a total of $15,000; (2) ongoing lost wages as a tractor-trailer driver, beginning in 2022, at the purported median annual tractor-trailer driver salary of $54,320 per year; and (3) other punitive damages in an unspecified amount.[3] (ECF Nos. 8 at 27-28; 15 at 10-12.) He does not request injunctive or declaratory relief.

The Court does not view the precluded *Thomas I* claims as adding anything to this case's amount in controversy. While neither post-filing events nor the existence of valid defenses lower the amount in controversy to divest a court of jurisdiction, an individual familiar with the applicable law could not reasonably believe that the precluded *Thomas I* claims added any monetary value to this case's stakes. *Coventry Sewage Assocs.*, 71 F.3d at 6-7. As a result, the alleged $15,000 in damages arising

---

[3] The plaintiff also states that he "seeks redress for the actual physical harm and the emotional harm the Plaintiff suffered by the Defendant's actions during these times." (ECF No. 8 at 27.) On its own, this statement adds nothing to the amount-in-controversy total. *See Abdel-Aleem v. OPK Biotech LLC*, 665 F.3d 38, 42 (1st Cir. 2012) (citing *Diefenthal v. Civ. Aeronautics Bd.*, 681 F.2d 1039, 1053 (5th Cir. 1982)).

7

from the initial breach of contract and related DTPA claims do not increase the amount in controversy.

The only claim surviving preclusion for which the plaintiff has provided any nonconclusory damages allegations is breach of the settlement agreement. He alleges ongoing lost wages as a tractor-trailer driver, beginning in 2022.[4] But he does not provide a basis to believe that more than $75,000 in past and prospective lost wages would be included as damages for a breach of the settlement agreement. The Court may consider the settlement agreement, as submitted by the plaintiff, in deciding this Rule 12(b)(1) motion. *Aversa v. United States*, 99 F.3d 1200, 1209-10 (1st Cir. 1996). In interpreting the settlement agreement, the Court looks to the parties' intent, as reflected in the contract's language; if that language is clear and unambiguous, the Court stops there. *Ins. Brokers W., Inc. v. Liquid Outcome, LLC*, 874 F.3d 294, 298 (1st Cir. 2017).

The traditional measure of damages for a breach of contract under Rhode Island law is the amount necessary to put the injured party as close as is reasonably possible to the position he would have been in if the contract had been fully performed. *Id.* at 299 (citing *George v. George F. Berkander, Inc.*, 169 A.2d 370, 372 (R.I. 1961)). A plaintiff looking to recover future lost income for a breach of contract "cannot rely upon speculation" and must prove his anticipated revenue, reduced for anticipated expenses, "with a reasonable degree of certainty." *Guzman v. Jan-Pro*

---

[4] No amount is added for punitive damages, which are generally unavailable for breaches of contract under Rhode Island law. *See Pier House Inn, Inc. v. 421 Corp.*, 812 A.2d 799, 809 (R.I. 2002) (Flanders, J., concurring).

8

*Cleaning Sys., Inc.*, 839 A.2d 504, 508 (R.I. 2003) (quoting *Mktg. Design Source, Inc. v. Pranda N. Am., Inc.*, 799 A.2d 267, 273 (R.I. 2002)).  Here, the settlement agreement required the defendant to take certain steps to put plaintiff in a position to test for his CDL license; the contract does not promise either successful licensure or employment.  (ECF Nos. 7-8 at 2; 8 at 3-4, 7.)  The Court lacks a non-speculative basis to believe that past and prospective lost wages totaling more than $75,000 are at stake here, either as expectation damages or consequential damages arising from a "special circumstance or peculiar condition … communicated to the [defendant] concerning the contract."  *George*, 169 A.2d at 373.  While the Court must "give due credit to the good faith claims of the plaintiff, [it] would be remiss in its obligation if it accepted every claim of damages at face value."  *Abdel-Aleem*, 665 F.3d at 43 (quoting *Diefenthal v. Civ. Aeronautics Bd.*, 681 F.2d 1039, 1052 (5th Cir. 1982)).

Because it appears to a legal certainty that the plaintiff's claims are for less than the jurisdictional amount, dismissal is proper.  The plaintiff has not set forth sufficient facts to show objective good faith or an amount in controversy that is not to a legal certainty below $75,000.  While the Court recognizes plaintiff's status as an unrepresented litigant, it has a constitutional responsibility to "police the border of federal jurisdiction."  *Spielman v. Genzyme Corp.*, 251 F.3d 1, 4 (1st Cir. 2001).

The Court will not exercise supplemental jurisdiction over the surviving breach of contract claim, given that all claims over which it had original jurisdiction have been dismissed.  28 U.S.C. § 1367(c)(3).  In the "usual case" where all federal-law claims have been resolved before trial, the balance of relevant factors will weigh

9

towards not exercising supplemental jurisdiction over the remaining state-law claims. *Zell v. Ricci*, 957 F.3d 1, 15 (1st Cir. 2020) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)).  These factors, particularly judicial economy and comity, weigh against supplemental jurisdiction here.

The Court GRANTS the defendant's Motion to Dismiss as follows: Mr. Thomas' claim of breach of the settlement agreement is DISMISSED without prejudice to being re-filed in a court of competent jurisdiction, and all other claims are DISMISSED with prejudice.  The Court DENIES both parties' Motions for Summary Judgment (ECF Nos. 11, 19) and defendant's Motion to Strike (ECF No. 24) as moot.

IT IS SO ORDERED.

_____
Mary S. McElroy
United States District Judge
January 24, 2025